## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

TORRI M. HOUSTON,          )
individually and on behalf of all others  )
similarly situated,              )
                             )
           Plaintiffs,      )
                             )
v.                          )     Case No. 4:17-CV-00266-BCW
                             )
SAINT LUKE'S HEALTH SYSTEM, INC.,)
et al.,                      )
                             )
           Defendants.     )

## ORDER

Before the Court is Defendants' Motion for Summary Judgment. (Doc. #145). The Court, being duly advised of the premises, grants said motion.

## BACKGROUND

Plaintiff Torri M. Houston (individually, "Houston") alleges claims against her former employer Saint Luke's Health System Inc. and Saint Luke's Northland Hospital Corporation (together, "Defendants") arising from Defendants' use of a "rounding policy" in calculating the compensable worktime of Defendants' non-exempt, hourly employees.

Houston worked at Saint Luke's Northland Hospital Corporation ("SLN"), which is part of Saint Luke's Health System, Inc. ("SLHS"), from March 24, 2014 through January 2, 2017. Throughout Houston's employment and the relevant time period, Defendants' timekeeping policies included a rounding policy. Under the rounding policy, an employee who clocks in either six minutes before or six minutes after the scheduled start of the shift receives compensation from the time that the shift was scheduled to begin, and an employee who clocks out either six minutes

1

before or six minutes after the scheduled end of the shift receives compensation from the time that shift was scheduled to end.

In the amended complaint, Houston alleges four claims, individually and on behalf of all others similarly situated ("Plaintiffs"), against Defendants, with each claim rooted in the rounding policy: (I) violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA"); (II) violation of the Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.527 ("MMWL"); (III) unjust enrichment / quantum meruit; and (IV) breach of contract. (Doc. #43). On September 6, 2018, the Court conditionally certified an "FLSA Collective" for Count I, and a "Missouri Class" for Count III. (Doc. #61).

The instant motion for summary judgment was fully briefed on July 26, 2021. (Docs. #145, #149, #150). The parties have stipulated to the uncontroverted facts, including their respective experts' analyses, for purposes of summary judgment. Defendants argue there is no genuine issue of material fact and they are entitled to judgment as a matter of law on each of the claims alleged in the amended complaint, whether alleged on behalf of Houston individually, or on behalf of the conditionally certified FLSA Collective and/or Missouri Class.

## LEGAL STANDARD

A party is entitled to summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Rafos v. Outboard Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The moving party bears the burden to establish both the lack of any genuine issue of material fact and an entitlement to judgment as a matter of law. Celotex, 477 U.S. at 323. In applying this burden, the Court affords to the non-moving party the benefit of all reasonable factual

2

inferences. <u>Mirax Chem. Prods. Corp. v. First Interstate Com. Corp.</u>, 950 F.2d 566, 569 (8th Cir. 1991).

## UNCONTROVERTED FACTS

In the amended complaint, Houston alleges individually and on behalf of all others similarly situated four claims against Defendants relating their use of a rounding policy in calculating payroll: (I) violation of the FLSA; (II) violation of the MMWL; (III) unjust enrichment; and (IV) breach of contract.

On September 6, 2018, the Court conditionally certified the FLSA Collective for Count I and the Missouri Class for Count III. The Court denied conditional certification of an FLSA collective for violation of the FLSA's minimum wage provision. The FLSA Collective is defined as all hourly employees who worked for SLHS entities in the United States between September 6, 2016 and September 6, 2018 who clocked in and out on an automated time clock. The Missouri Class is defined as all hourly employees who worked for the SLHS entities in Missouri between April 10, 2012 and September 6, 2018 who clocked in and out on an automated time clock.

On December 10, 2018, Houston's class action administrator sent out the approved collective and class notice to the FLSA Collective and the Missouri Class. In total, the FLSA Collective includes 1,430 individuals and the Missouri Class includes 13,683 individuals. Because there is some overlap between the FLSA Collective and the Missouri Class, the parties divide the individuals making up the FLSA Collective and the Missouri Class into three groups, as follows: (a) 190 individuals who are members of the FLSA Collective only, i.e. they opted in and worked for SLHS not in Missouri; (b) 1,240 individuals who are members of the FLSA Collective and the Missouri Class, i.e. they opted in and worked for SLHS in Missouri; and (c) 12,440 individuals

3

who are members of the Missouri Class only, i.e. they did not opt in and worked for SLHS in Missouri.[1]

Houston worked at SLN as a surgical technologist from March 24, 2014 to January 2, 2017. In this role, Houston was a non-exempt, hourly employee, such that she was eligible for overtime pay at 1.5 times her regular rate of pay for hours worked in excess of 40 in one workweek. Houston's last day of work at SLN was July 3, 2016, and she was on an unpaid leave of absence from that date until the conclusion of her employment on January 2, 2017.

Since April 10, 2012, Defendants have used a software-based timekeeping system called Kronos Workforce Timekeeper ("Kronos"). Defendants electronically record employee work hours for timekeeping purposes. Through Kronos, Defendants' employees clock in at the beginning of a scheduled shift and clock out at the end of a scheduled shift using an electronic time clock device (badge) or through an internet-based portal.

Kronos automatically applies Defendants' timekeeping rules, which includes the rounding policy for non-exempt, hourly employees. The rounding policy set forth in Defendants' policies has been in place since April 10, 2012, and provides as follows.

For the start of a scheduled shift: "employees whose jobs are non-exempt who are scheduled to work [and] clock in up to six (6) minutes before the scheduled start of their shift or up to six (6) minutes after . . . receive compensation from the beginning of their scheduled shift." For the end of a scheduled shift: "employees whose jobs are non-exempt who are scheduled to work [and] clock out up to six (6) minutes before the scheduled end of their shift or up to six (6) minutes after . . . receive compensation to the scheduled end of the shift." Compensation is calculated based on the nearest tenth of the hour from the beginning and end of the scheduled shift.

---

[1] The parties acknowledge minor discrepancies in these numbers between their respective experts but agree these discrepancies are not material for purposes of this motion.

In sum, Defendants' non-exempt, hourly employees clock in and out through Kronos, which rounds the clock in or clock out time to the nearest tenth of the hour for purposes of payroll. At the start or end of a scheduled shift, the clock in and clock out time is rounded to the scheduled shift's start or end time, as long as the employee clocks in within six minutes of the shift's start or end time. For example, for an employee scheduled for a shift from 8:00 a.m. to 5:00 p.m., the rounding policy operates as follows. As long as the employee clocks in between 7:54 a.m. and 8:06 a.m., he is treated by payroll system as having clocked in at 8:00 a.m. Similarly, as long as the employee clocks out between 4:54 p.m. and 5:06 p.m., he is treated by payroll system as having clocked out at 5:00 p.m.

The parties each retained and designated experts who analyzed the time records for all non-exempt, hourly collective / class members to assess how the rounding policy impacted compensable time. Plaintiff's expert is L. Scott Baggett, Ph.D. Defendants' expert is Deborah A. Foster, Ph.D. Both experts reviewed and analyzed the timekeeping data produced by Defendants for the FLSA Collective from September 5, 2015 through September 6, 2018 and for the Missouri Class from April 10, 2012 through September 6, 2018.[2]

**A. Plaintiffs' Expert L. Scott Baggett, Ph.D.**

Baggett, the designated expert for Houston and the conditionally certified class and collective, analyzed the impact of the rounding policy on the compensable work hours of the FLSA Collective, the Missouri Class, and Houston individually. For the FLSA Collective and the Missouri Class, Baggett analyzed the timekeeping records in four different ways: (1) shift by shift; (2) workweek by workweek; (3) employee by employee; and (4) overall. For each of these four

---

[2] The parties' experts refer to time "added" and time "removed." Time "added" means Plaintiffs received compensation for more time than actual time records reflect, e.g. "late" clock in and/or "early" clock out. Time "removed" means Plaintiffs received compensation for less time than actual time records reflect, e.g. "early" clock in and/or "late" clock out.

categories, Baggett assessed whether the rounding policy added compensable time, did not impact compensable time, or removed compensable time.

### 1. Shift by shift

Baggett's shift by shift analysis reviewed 7,044,709 individual shifts and determined that as result of the rounding policy 36.6% of shifts had time added, 14.9% of shifts were not impacted, and 48.5% of shifts had time removed.

### 2. Workweek by workweek

Baggett's workweek by workweek analysis reviewed 1,762,137 workweeks and determined that as a result of the rounding policy, 37.9% of workweeks had time added, 6.2% of workweeks were not impacted, and 55.9% of workweeks had time removed.

### 3. Employee by employee

Baggett's employee by employee analysis reviewed the timekeeping records for 13,871 employees and determined that as a result of the rounding policy, 34.7% of employees had time added, 0.9% of employees were not impacted, and 64.4% of employees had time removed.

### 4. Overall net impact

Baggett calculated the overall net impact of the rounding policy on employees' time for 13,871 employees and determined a net loss of 74,282.37 hours during the relevant time period. The Baggett report also includes a visual depiction of this net loss, reflecting the increasing amount of time removed from April 10, 2012, when the rounding policy began, through September 6, 2018, when Houston filed the complaint.

For his overall damages calculation based on a net loss of 74,282.37 hours for the FLSA Collective and the Missouri Class during the relevant period, Baggett estimates damages at $117,622.30 (assuming a 30-minute meal period) and $139,219.26 (assuming no 30-minute meal

6

period). For the Missouri Class only, Baggett estimates damages at $2,107,753.80 (assuming a 30-minute meal period) and $2,212,425.59 (assuming no 30-minute meal period).

### 5. Houston individually

Baggett also analyzed Houston's individual records to calculate the impact of the rounding policy. Baggett's shift by shift analysis shows 18.58% of Houston's shifts had time added, 36.28% of Houston's shifts were not impacted, and 45.13% of Houston's shifts had time removed. Baggett's workweek by workweek analysis shows 17.59% of Houston's workweeks had time added, 11.11% of Houston's workweeks were not impacted, and 71.30% of workweeks had time removed. Baggett calculated Houston's overall net impact at 7.63 hours removed and damages in the amount of $205.13.

### B. Defendants' Expert Deborah A. Foster, Ph.D.

Foster, the designated expert for Defendants, analyzed the payroll data by categorizing it into three lookback periods for the FLSA Collective and the Missouri Class. Foster then analyzed each category of records from three different angles to see whether the rounding policy added time, had no impact, or had time removed.

The three categories through which Foster analyzed the timekeeping records by lookback period are as follows: (1) FLSA Lookback 1: records from September 6, 2016 through September 2018 consisting of 240,000 shifts; (2) FLSA Lookback 2: records from September 6, 2015 through September 6, 2018 consisting of 390,000 shifts; and (3) Missouri Lookback: records from April 10, 2012 through September 6, 2018 consisting of 670,000 shifts. Foster analyzed each of these categories on a shift by shift basis, an employee by employee basis, and on the basis of "shift-by-shift but isolated to employees with total net time removed."

### 1. Shift by shift

Foster's report reflects as follows for the shift by shift analysis of the rounding policy's impact. For FLSA Lookback 1, 36.5% of shifts had time added, 14.2% of shifts were not impacted, and 49.2% of shifts had time removed. The average amount of time added was 3.05 minutes per shift. The average amount of time removed per shift was 3.59 minutes per shift. The average net time was 39 seconds removed per shift.

For FLSA Lookback 2, 36.3% of shifts had time added, 14.3% of shifts were not impacted, and 49.4% of shifts had time removed. The average amount of time added was 3.04 minutes per shift. The average amount of time removed was 3.60 minutes per shift. The average net time was 40 seconds removed per shift.

For Missouri Lookback, 36% of shifts had time added, 14.8% were not impacted, and 49.2% had time removed. The average amount of time added was 3.04 minutes per shift. The average amount of time removed was 3.63 minutes per shift. The average net time was 42 seconds removed per shift.

### 2. Employee by employee

Foster's report reflects the following for the employee by employee analysis of the rounding policy's impact. For FLSA Lookback 1, 36.0% of employees had time added, 1.2% were not impacted, and 62.8% had total net time removed. For employees with net added time, the average was 3.45 hours. For employees with net time removed, the average was 6.56 hours. Overall, the net effect of rounding came to 2.87 total hours removed for the average employee for the entire period.

For FLSA Lookback 2, 34.3% of employees had time added, 0.4% of employees were not impacted, and 65.4% of employees had total net time removed. For employees with net added

time, the average was 4.55 hours. For employees with net time removed, the average was 8.47 hours removed for the entire period. Overall, the net effect of rounding came to 3.98 hours removed for the average employee for the entire period.

For Missouri Lookback, 32.9% of employees had time added, 0.9% of employees were not impacted, and 66.1% of employees had total net time removed. For employees with net added time, the average was 5.81 hours. For employees with net time removed, the average was 11.45 hours. Overall, the net effect of rounding came to 5.65 hours removed for the average employee for the entire period.

### 3. Shift by shift for employees with net time removed

Foster's report reflects the following for the shift by shift analysis for those employees with total net time removed. For FLSA Lookback 1, consisting of 572 employees who had net time removed through the rounding policy, 28.8% of shifts had time added, 13.7% of shifts were not impacted, and 57.5% of shifts had time removed. Among shifts with time added, the average amount of time added was 2.69 minutes per shift. Among shifts with time removed, the average amount of time removed was 3.87 minutes per shift. Overall, the average net effect of rounding was 87 seconds removed per shift.

For FLSA Lookback 2, consisting of 717 employees who had net time removed through the rounding policy, 29.1% of shifts had time added, 13.8% of shifts were not impacted, and 57.1% of shifts had time removed. Among shifts with time added, the average amount of time added was 2.70 minutes per shift. Among shifts with time removed, the average amount of time removed was 3.85 minutes per shift. Overall, the average net effect of rounding was 85 seconds removed per shift.

Case 4:17-cv-00266-BCW   Document 159   Filed 03/29/22   Page 9 of 21

For Missouri Lookback, consisting of 9,046 employees who had net time removed through the rounding policy, 29.4% of shifts had time added, 14.3% of shifts were not impacted, and 56.3% of shifts had time removed. Among shifts with time added, the average amount of time added was 2.73 minutes per shift. Among the shifts with time removed, the average amount of time removed was 3.89 minutes per shift. Overall, the average net effect of rounding was 83 seconds removed per shift.

## ANALYSIS

Defendants argue there is no genuine issue of material fact and they are entitled to judgment as a matter of law with respect to each of Plaintiffs' claims. First, Defendants argue they are entitled to summary judgment under the FLSA and the MMWL because the rounding policy is neutral and lawful. Second, Defendants argue they are entitled to summary judgment on each claim because Plaintiffs' damages, if any, are de minimis and non-compensable as a matter of law. Third, Defendants argue they are entitled to summary judgment in part on Counts II, III, and IV based on the applicable statutes of limitations. Finally, Defendants argue they are entitled to judgment on Houston's claim for breach of contract.

Plaintiffs do not dispute Defendants' assertion of the limitations period applicable to Counts II, III, and IV, or that any damages to which Plaintiffs might be entitled are thus limited. Defendants' summary judgment motion is therefore granted in part as to the applicable statutes of limitations for Counts II, III, and IV. Mo. Rev. Stat. § 290.527 (MMWL claim has two-year limitations period); Mo. Rev. Stat. § 516.140 (employee claim for unpaid minimum wages or unpaid overtime has 2-year limitations period); Mo. Rev. Stat. § 516.120 (general 5-year limitations period for actions in contract).

**A. Defendants are entitled to summary judgment on Count I under the FLSA.**

Defendants argue there is no genuine issue of material fact and they are entitled to judgment as a matter of law that the rounding policy does not violate the FLSA because it is facially neutral and lawfully applied. Plaintiffs agree the rounding policy is facially neutral but argue the rounding policy is not neutral as applied.

The FLSA requires employers to pay their employees a regular hourly rate up to forty hours per week and overtime compensation at a rate of one and one-half times the hourly rate of pay for hours worked in excess of forty hours per week. 28 U.S.C. §§ 206, 207(a). Employers may use time clocks to track employee work hours. 29 C.F.R. § 785.48 ("Use of time clocks").

> (a) [ . . . ] In those cases where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods, provided, of course, that they do not engage in any work. Their early or late clock punching may be disregarded. Minor differences between the clock records and actual hours worked cannot ordinarily be avoided, but major discrepancies should be discouraged since they raise a doubt as to the accuracy of the hours actually worked.

29 C.F.R. § 785.48(a).

> (b) "Rounding" practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

29 C.F.R. § 785.48(b) (citing 29 U.S.C. §§ 201-219, 254).

The Eighth Circuit has not interpreted this federal rounding regulation, so the Court looks to the decisions of other courts. Generally, other courts have upheld the validity of neutral rounding practices as an efficient and practical method of calculating worktime. Corbin v. Time Warner

11

Entm't.-Adv. Newhouse P'ship, 821 F.3d 1069, 1075-76 (9th Cir. 2016); (See's Candy Shops, Inc. v. Sup. Ct., 210 Cal. App. 4th 889, 903 (2012)). A neutral rounding practice is one which is consistent and that "on average, favors neither overpayment or underpayment," and/or "is meant to average out in the long-term." Corbin, 821 F.3d at 1076-77 (citing Alonzo v. Maximus, Inc., 832 F. Supp. 2d 1122, 1126 (C.D. Cal. 2011); East v. Bullock's Inc., 34 F. Supp. 2d 1176, 1184 (D. Ariz. 1998)); cf. Gonzalez v. Farmington Foods, Inc., 296 F. Supp. 2d 912, 932-33 (N.D. Ill 2003).

Here, the parties agree that Defendants' rounding policy is facially neutral. In particular, the rounding system is uniformly applied through Kronos and just as the rounding policy applies to an early or late clock in, it applies equally to an early or late clock out, provided the clock in or out occurs within 6 minutes of the beginning or end of the scheduled shift. (Doc. #149 at 10-11); Utne v. Home Depot U.S.A., Inc., Case No. 16-cv-01854-RS, 2017 WL 5991863, at *2 (N.D. Cal. Dec. 4, 2017) (citing See's Candy, 2010 Cal. App. 4th at 902) (collecting cases) (rounding rule violated where timekeeper only rounds down).

Because there is no dispute that Defendants' rounding policy is neutral on its face, any FLSA violation arises only if the rounding policy as applied, "over a period of time" systematically undercompensates Defendants' employees. Corbin, 821 F.3d at 1080; Alonzo, 832 F. Supp. 2d at 1126 (collecting cases).

To determine whether the rounding policy violates the FLSA as applied, the Court considers the experts' conclusions to which the parties' stipulated for summary judgment purposes. Because Plaintiffs are entitled to the benefit of all reasonable factual inferences under the applicable summary judgment standard, the Court considers whether the conclusions of Plaintiffs'

12

expert Baggett give rise to a genuine issue of material fact whether the rounding policy undercompensates Defendants' employees overtime.

Plaintiffs argue Baggett's report demonstrates a genuine issue of material fact whether the rounding policy results in employee undercompensation over time. Baggett reviewed timekeeping records from April 10, 2012 through September 6, 2018, and found during the relevant time period, Plaintiffs' cumulative net hours lost through the rounding policy progressively increased.

Additionally, Baggett's analysis of the timekeeping records resulted in the following conclusions. On a shift by shift basis, 48.5% of shifts had time removed through rounding. On a workweek by workweek basis, 55.9% of workweeks had time removed through rounding. On an employee by employee basis, 64.4% of employees had time removed through rounding. On an overall net impact basis, for the time period analyzed, employees had 74,272 hours removed through rounding.

Plaintiffs argue, relying in part on <u>Corbin</u>, Baggett's conclusions give rise to an issue of material fact whether the rounding policy "averages out in the long term" because Baggett's conclusions support that the rounding policy "resulted, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." (Doc. #149 at 13).

Despite Plaintiffs' assertions, the Court's review of available case law on the issue suggests that, even relying on Baggett's expert analysis and conclusions, Defendants are still entitled to summary judgment on Plaintiffs' claim alleging violation of the FLSA in Count I.

First, in <u>Corbin</u>, the Ninth Circuit held the rounding policy at issue in that case did not violate the FLSA and rejected the plaintiff's argument "that unless every employee gains or breaks even over every pay period or every set of pay periods analyzed, an employer's rounding policy violates the federal rounding regulation." 821 F.3d at 1077. The <u>Corbin</u> court held that construing

13

the rounding regulation to include this individual requirement "vitiates the purpose and effectiveness of using rounding as a timekeeping method." Id. at 1079. In the Court's view, Plaintiffs' reliance on Corbin for the proposition set forth is, though a correct citation, taken out of context.

Second, Baggett's conclusions as relied on by Plaintiffs are also taken out of context. Plaintiffs argue caselaw approves using a net effect approach or an employee percentage approach to determine whether a rounding policy is neutral as applied. AHMC Healthcare, Inc. v. Sup. Ct., 24 Cal. App. 5th 1014, 1028 (2018); Shiferaw v. Sunrise Senior Living Mgmt., Inc., Case No. LA CV13-02171-JAK (PLAx), 2016 WL 6571270, at *28 (C.D. Cal. Mar. 21, 2016) ((1) compare actual clock in time with rounded clock in time to find overall net effect; or (2) compare percentage of employees who were undercompensated with percentage of employees who were overcompensated through rounding)). Here, Plaintiffs allege Baggett's overall net effect conclusion shows Plaintiffs were undercompensated for 74,282.37 hours of time. Perhaps unsurprisingly, Plaintiffs do not emphasize that 74,282.37 hours of work time removed through application of the rounding policy relates to 13,871 employees across shifts performed between April 10, 2012 and September 6, 2018. For purposes of illustration only and not to suggest the rounding policy equally reduced each Plaintiff's work time equally, when distributed among 13,871 employees, 74,282.37 hours equates to less than 5.5 hours per employee, with this 5.5 net hours lost distributed among all shifts worked between April 2012 and September 2018.

Similarly, Baggett's employee by employee analysis resulted in the conclusion that 64.4% of employees had time removed attributable to the rounding policy. The employee by employee analysis also showed 34.7% of employees had time added by the rounding policy, and 0.9% were not impacted. Even assuming 64.4% of employees had time removed from shifts performed during

14

the relevant time period, this conclusion does not necessarily equate to systematic undercompensation because the rounding policy at issue both adds and subtracts time. Employee by employee analysis of a slightly different timeframe could produce a result in which a majority of employees had time added through rounding. Utne, 2017 WL 5991863, at *3; Boone v. PrimeFlight Aviation Servs., Inc., 15-CV-6077 (JMA) (ARL), 2018 WL 1189338, at *7-*9 (E.D.N.Y. Feb. 20, 2018) (citing Contini v. United Trophy Mfg., Inc., No. 6:06-cv-432, 2007 WL 1696030, at *4 (M.D. Fl. June 12, 2007) (no FLSA violation where employee could gain or lose 7 minutes of time); East, 34 F. Supp. 2d at 1184 (rounding policy sufficiently averaged out where rounding system did not credit for all time but credited for time not actually worked).

A finding that the rounding policy is neutral in application is also supported by Baggett's shift by shift analysis, which found 48.5% of shifts during the relevant period had time removed by rounding and 51.5% had time added or were not impacted. Moreover, Defendants' expert Foster's shift by shift analysis resulted in similar conclusions: 49.2% of shifts had time removed and 50.7% of shifts had time added or were not impacted by rounding.

For all of these reasons, despite Plaintiffs' assertion that genuine issues of material fact remain whether the rounding policy averages out over time, under the persuasive authority set forth, the rounding policy on average favors neither overpayment nor underpayment. Corbin, 821 F.3d at 1076. The rounding policy is thus neutral as applied and does not violate § 785.48(b) such that Defendants are entitled to summary judgment on Plaintiffs' FLSA claim alleged in Count I as a matter of law. Because the rounding policy does not violate the FLSA, Defendants are also entitled to summary judgment on Houston's individual FLSA claim.

**B. Defendants entitled to summary judgment on Count II under the MMWL.**

Defendants argue they are entitled to summary judgment on Houston's MMWL claim alleged in Count II under the same analysis applicable to Houston's FLSA claims. Plaintiffs do not dispute Defendants' combined analysis of these claims.

The MMWL "shall be interpreted in accordance with the FLSA . . . and any regulations promulgated thereunder," unless the MMWL provides differently. Mo. Rev. Stat. § 290.505.4; 8 C.S.R. § 30-4.010. Because the MMWL nor Missouri regulations have a specific provision applicable to rounding, the FLSA rounding rules apply. Because, as discussed above, Defendants' rounding policy does not violate the FLSA, Defendants are equally entitled to summary judgment on Houston's MMWL claim alleged in Count II.

**C. Defendants are entitled to summary judgment on Count III for unjust enrichment.**

Defendants argue they are entitled to summary judgment on Plaintiffs' unjust enrichment claim[3] because there is no genuine issue of material fact that any uncompensated worktime is de minimis and Defendants are thus entitled to judgment as matter of law. Specifically, Defendants argue they are entitled to summary judgment on Count III for unjust enrichment because the average shift had no more than 42 seconds removed through application of the rounding policy.

"Unjust enrichment occurs where a benefit is conferred upon a party under circumstances in which retention of that benefit without paying its reasonable value would be unjust." Pitman v. City of Columbia, 309 S.W.3d 395, 402 (Mo. Ct. App. 2010) (citing Miller v. Horn, 254 S.W.3d 920, 924 (Mo. Ct. App. 2008)). The essential elements of a claim for unjust enrichment in Missouri are, with the third element as the most significant, the following: (1) plaintiff conferred a benefit

---

[3] Though also asserted as an alternative basis for summary judgment for Counts I, II, and IV, because Defendants are otherwise entitled to summary judgment on those claims, the Court specifically discusses the de minimis doctrine only with respect to Count III.

on the defendant; (2) the defendant appreciated "the fact of such benefit"; and (3) the defendant's retention of the conferred benefit "under circumstance in which retention without payment would be inequitable." Pitman, 309 S.W.3d at 402 (citing White v. Pruiett, 39 S.W.3d 857, 863 (Mo. Ct. App. 2001)).

Under 29 C.F.R. § 785.47, "insubstantial or insignificant periods of time beyond scheduled working hours, which cannot . . . be precisely recorded for payroll purposes, may be disregarded. The courts have held that such trifles are de minimis." 29 C.F.R. § 785.47 (citing Anderson v. Mt. Clements Pottery Co., 328 U.S. 680 (1946)). "This legal concept, known as the de minimis doctrine allows employers to disregard otherwise compensable work when only a few seconds or minutes of work beyond the scheduled working hours are in dispute." Lyons v. Conagra Goods Packaged Foods LLC, 899 F.3d 567, 584 (8th Cir. 2018) (citing Kellar v. Summit Seating, Inc., 664 F.3d 169, 176 (7th Cir. 2011) (citing Singh v. City of New York, 524 F.3d 361, 370 (2d Cir. 2008)).

In determining whether work performed is properly considered de minimis, the following factors are relevant: (1) "the amount of time spent on the extra work"; (2) "the practical administrative difficulties of recording additional time"; (3) "the regularity with which the additional work is performed"; and (4) "the aggregate amount of compensable time." Id. (citing Lindow v. United States, 738 F.2d 1057, 1062-63 (9th Cir. 1984); 29 C.F.R. § 785.47).

First, Plaintiffs concede the factor for "the amount of time spent on extra work" weighs in Defendants' favor, since the Foster report shows that the average amount of time removed per shift was 3.63 minutes per shift. (Doc. #149); Lyons, 899 F.3d at 584 (finding "two to five minutes" per day de minimis).

Second, Plaintiffs argue any administrative burden necessitated by recording employees' actual work time would be minimal because Defendants' timekeeping records are electronic, citing

Aguilar v. Mgmt. & Training Corp., 948 F.3d 1270, 1284 (10th Cir. 2020). In Aguilar, the plaintiff-employees were required to perform certain work-related tasks before and after every shift. 948 F.3d at 1285. The Aguilar court found the administrative burden factor weighed in favor of the plaintiff-employees because the defendant-employer recorded time electronically, and the time spent on the required pre- and post-shift tasks that was not recorded electronically could be reasonably estimated. 948 F.3d at 1285.

Though electronic timekeeping reduces the administrative burdens on employers, electronic timekeeping does not mean there is no administrative burden. Corbin, 821 F.3d at 1081. Payroll calculations still require some verification of actual time worked. Id. (requiring employer to un-round every timestamp undermines the purpose of federal rounding regulation). In contrast with Aguilar and as discussed below, the record does not suggest Plaintiffs regularly performed required work tasks before and/or after their shifts, for which tasks Defendants could reasonably estimate actual time. Though Defendants rely on electronic timekeeping which reduces the administrative burden, this factor weighs in favor of Defendants because in order to compensate Plaintiffs on the basis of actual time worked, Defendants would have to individually assess each employee's actual time worked for every pay period.

Third, Plaintiffs argue "the regularity with which the additional work is performed" weighs in their favor because 48.5% of shifts had time removed and 55.9% of workweeks had time removed. Additionally, Plaintiffs argue they performed at least some uncompensated work for all workweeks for the relevant time period such that this regularity factor weighs against a de minimis finding. Defendants argue, to the contrary, any additional uncompensated work is not performed with regularity because though the rounding policy applied to each shift over the relevant period, employee clock in and clock out patterns are not consistent or predictable. Defendants argue there

18

is no "regularity" for any "additional work" because each employee can, for each shift, clock in or out up to 6 minutes "early" or up to 6 minute "late" and be compensated for the whole shift. The record does not suggest Plaintiffs must regularly clock in early to prepare for their shift; the rounding policy applies equally for Plaintiffs who clock in up to six minutes after the scheduled start time. Lyons, 899 F.3d at 584 (time required before and after shift to check in and check out tools which were necessary for the performance of job duties was de minimis). This factor weighs in Defendants' favor.

Fourth, Plaintiffs argue the record demonstrates the aggregate amount of uncompensated time is not de minimis, since the Baggett report calculated an aggregate net loss of 74,282.37 hours of unpaid work for the Missouri Class. In opposition, Defendants argue the Foster report calculated for the Missouri Class an average loss of 42 seconds per shift, and for employees with net time removed from rounding, the average loss was 1.38 minutes per shift.

Even if the Court were to find the aggregate uncompensated loss factor weighs against a finding that any uncompensated work were de minimis, there is no genuine issue of material fact that Defendants are entitled to judgment as a matter of law on Plaintiffs' claim for unjust enrichment. The basis for this determination is rooted in the Court's analysis of Plaintiffs' other claims. To prove an unjust enrichment claim, a plaintiff must prove that the defendant's retention of the benefit conferred without paying for it would be inequitable. White, 39 S.W.3d at 863. Such a conclusion is not supported by the circumstances presented here, where Defendants' rounding policy is consistent with applicable statutes and regulations. Defendants are thus entitled to summary judgment on Plaintiffs' Count III.

**D. Defendants are entitled to summary judgment on Count IV for breach of contract.**

Defendants argue they are entitled to summary judgment on Houston's individual claim for breach of contract because Houston's breach of contract claim rests on conclusory allegations, is barred by Defendants' substantial performance, and/or Houston waived the claim.

The essential elements of a claim for breach of contract are (1) a contract; (2) plaintiff's performance under the contract; (3) breach by the defendant; and (4) damages. Keveney v. Mo. Military Acad., 304 S.W.3d 98, 104 (Mo. 2010).

In this case, Houston individually alleges Defendants contracted to pay her an agreed-upon hourly rate for every hour worked during her employment with Defendants. Houston alleges Defendants breached the contract by failing to pay her for every hour worked.

Under the uncontroverted facts, Houston was employed by Defendants as a surgical technologist from March 24, 2014 through January 2, 2017. Defendants kept Houston's payroll records through Kronos, and the rounding rule was in effect throughout Houston's employment. Baggett analyzed Houston's payroll records and determined the overall net impact of rounding on Houston's compensable time was a loss of 7.63 hours, equating to $205.13 in damages.

While the specific terms of Houston's employment contract are not alleged, the factual basis for Houston's breach of contract claim is sufficiently set forth such that Defendants are not entitled to summary judgment on Count IV on the basis that the claim rests on conclusory allegations. The Court thus considers whether Defendants are otherwise entitled to summary judgment.

Defendants argue they are entitled to summary judgment on Houston's claim for breach of her employment contract based on Defendants' substantial compliance with the contract's terms. Defendants argue even assuming Houston worked 7.63 uncompensated hours over the course of

her employment, this uncompensated time is attributable to a legal rounding policy. Consistent with the Court's analysis above, Defendants are entitled to summary judgment based on their substantial compliance with the employment contract's terms. <u>Gundaker v. Templer</u>, 560 S.W.2d 306, 309 (Mo. Ct. App. 1977) (substantial performance if deviation was slight and other party received substantially the same benefit). Moreover, even assuming Houston incurred $205.13 in damages over the course of her employment, these alleged damages are not attributable to any breach of contract, but rather Defendants' legal timekeeping policies to which Houston presumably assented under the employment contract now sued upon. Because Defendants are entitled to summary judgment on this basis, the Court declines to consider whether Houston's breach of contract claim is also barred by waiver based on Houston's retention of any overcompensation attributable to Defendants' rounding policy. Accordingly, it is hereby

ORDERED Defendants' Motion for Summary Judgment (Doc. #145) is GRANTED.

IT IS SO ORDERED.


DATED: <u>March 29, 2022</u>

/s/ Brian C. Wimes
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT
